# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:17-CR-30110-RAL |
|---|---|
| Plaintiff, | |
| | OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION TO SUPPRESS |
| vs. | |
| ISADORE JOHN CONQUERING BEAR, | |
| Defendant. | |

On July 16, 2018, Isadore John Conquering Bear (Conquering Bear) filed an objection to Magistrate Judge Mark A. Moreno's Report and Recommendation on Conquering Bear's Motion to Suppress. Doc. 64. Because Conquering Bear did not receive an effective Miranda warning before his interrogation but nonetheless provided his statements voluntarily, this Court adopts Magistrate Judge Moreno's Recommendation in its entirety, granting in part and denying in part the Motion to Suppress.

## I.  Background

On June 11, 2017, tribal police on the Rosebud Sioux Indian Reservation responded to a call requesting assistance in the Reservation's Ring Thunder community. Government Exhibit 1. The responding officer, Jim Scott, met with Britnee Rattling Leaf, who claimed that she had been raped by a man who was inside house 779. Government Exhibit 1 at 5. Tribal police entered house 779 and found Conquering Bear, whom they arrested and placed in the Rosebud Jail. Government Exhibit 1 at 6.

The next day, while still in custody, Conquering Bear, who is deaf and communicates primarily via American Sign Language (ASL), was interviewed by Special Tribal Agents Kory Provost and Matthew Tucker in the Rosebud Jail without an ASL interpreter present. Government Exhibit 3. They reviewed the advice of rights form with him, which he signed. Government Exhibit 3. Agents Provost and Tucker communicated with Conquering Bear by writing questions in English and asking him to respond by shaking his head or providing written responses in English. Government Exhibit 3. During the interview, Conquering Bear provided contradictory responses to the questions asked of him, nonverbally indicating in separate answers that Britnee Rattling Leaf was both awake and asleep when the two had sex. Government Exhibit 6 at 6. Agent Provost's attempts to have Conquering Bear write out his answers to questions were unsuccessful, as Conquering Bear instead copied the language of the question asked of him. Government Exhibit 3. Thirty minutes into the interview, Agent Provost contacted an Assistant United States Attorney and told her that he felt uncomfortable proceeding with the interview because of Conquering Bear's inability to understand the questions. Government Exhibit 6 at 8. Agent Provost's hesitation led him to end the interview shortly thereafter. Government Exhibit 3.

The United States indicted Conquering Bear on one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2). Doc. 2. Conquering Bear moved to suppress the statements he made to Agents Provost and Tucker during the interview on Miranda v. Arizona, 384 U.S. 436 (1966), and due process grounds. Doc. 46 at 1. Judge Moreno held an evidentiary hearing on this motion on June 11, 2018. At this hearing, Dr. Robert Pollard, an expert on deafness, testified that Conquering Bear's "reading, vocabulary, and comprehension were at a second grade level, far below the sixth grade level of reading competency required to understand the Miranda warnings." Doc. 62 at 5. Thus, Dr. Pollard concluded, the attempt to administer a Miranda

warning to Conquering Bear was ineffective. Judge Moreno issued a Report and Recommendation on the Motion to Suppress on June 29, 2018, in which he found that Conquering Bear did not knowingly and intelligently waive his Miranda rights but did make his statements voluntarily. Consequently, Judge Moreno recommended that this Court grant the Motion to Suppress with respect to the use of the statements as evidence and deny the Motion to Suppress with respect to the use of the statements for impeachment purposes. Conquering Bear now objects to the finding that his statement was voluntary.

## II.     Discussion

A district court must review de novo "those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Neither of the parties has objected to Judge Moreno's conclusion that Conquering Bear did not knowingly and intelligently waive his Miranda rights before Agents Provost and Tucker interrogated him. This Court thus adopts Judge Moreno's finding that Conquering Bear did not knowingly and intelligently waive his Miranda rights and excludes evidence obtained during the interview from the Government's case-in-chief against Conquering Bear. Conquering Bear challenges Judge Moreno's finding that the statements he made to Agents Provost and Tucker were given voluntarily, arguing that his disability prevented him from comprehending what the agents were asking of him. Doc. 64 at 4.

Notwithstanding Miranda deficiencies, a voluntary statement made to law enforcement may be used against a defendant for impeachment purposes, but an involuntary confession is wholly inadmissible as evidence because such a confession "offends due process." Schneckloth v. Bustamonte, 412 U.S. 218, 225–226 (1973) (citation omitted). The Government bears the burden of showing by a preponderance of the evidence that a defendant's statement was voluntary.

Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004). "Statements to law enforcement authorities are voluntary if they are 'the product of an essentially free and unconstrained choice by [their] maker.'" United States v. Vinton, 631 F.3d 476, 482 (8th Cir. 2011) (alteration in original) (quoting Schneckloth, 412 U.S. at 225). A statement is involuntary only if (1) police coercion overbore the defendant's will, and (2) there is reason to believe that the suspect was susceptible to coercion because of some physical or mental condition. See United States v. Anaya, 715 F.Supp.2d 916, 949–54 (D.S.D. 2010). "Whether a confession is involuntary is judged by the totality of the circumstances." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc).

No interrogation tactic "render[s] a confession involuntary . . . unless 'the overall impact of the interrogation caused the defendant's will to be overborne.'" United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (quoting Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993)). Here, there is no evidence that Conquering Bear's will was overborne by the absence of an ASL translator. Conquering Bear gave some inconsistent or non-responsive answers that may reflect some misunderstanding of questions, but some answers, particularly about his biographical information, reflect an understanding and proper response. The officers certainly were not acting in a manner calculated to overbear Conquering Bear's will, but seemed sensitive to Conquering Bear's inability to converse in English. As the Court noted in Brave Heart, even confessions elicited through deception and misinformation are not involuntary unless they overbear the defendant's will. Id.

Courts which have previously considered the voluntariness of a defendant's statements made in English when English is not the defendant's primary language have concluded that linguistic difficulties do not make a defendant's statements involuntary. In Thatsaphone v. Weber,

4

137 F.3d 1041 (8th Cir. 1998), law enforcement officers conducted a noncustodial interview of Thatsaphone, a Laotian immigrant accused of engaging in sex with a minor. Id. at 1043. Both Thatsaphone and law enforcement communicated in English during the interview, even though English was not Thatsophone's primary language. Id. The court held that because "Thatsaphone's responses and conduct gave no indication that coercion was causing his will to be overborne, either by his lack of English skills or any other factor," his responses were voluntary. Id. at 1047. Similarly, in United States v. Munoz-Escalante, the Court held that the defendant's "(in)ability to speak English" did not cause his statements to be involuntary. No. CR 13-50154-01-KES, 2014 WL 2574535 at *3 (D.S.D. June 9, 2014). "The fact that English is a second language to a person being interviewed by police does not ipso facto cause any statements made by such person to be involuntary." Id. Thus, Conquering Bear's difficulty communicating in English does not mean that his responses in written English were involuntary. Like Thatsaphone, Conquering Bear's "responses and conduct gave no indication that coercion was causing his will to be overborne" because of his limited ability to communicate in English. Rather, Conquering Bear's responses indicate that he understood and voluntarily answered at least some of the questions posed by the Agents. If portions of Conquering Bear's responses do get used at trial to cross-examine Conquering Bear, this Court will give Conquering Bear and his counsel latitude to explore where Conquering Bear may have misinterpreted questions.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Magistrate Judge Mark A. Moreno's Report and Recommendation, Doc. 62, is adopted in its entirety. Consequently, it is further

ORDERED that Conquering Bear's Motion to Suppress, Doc. 46, is granted in part and denied in part.

DATED this **30**ᵗʰ day of July, 2018.

BY THE COURT:

Roberto A. Lange

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE